**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| PERETZ, LLC,<br>*a Florida Limited Liability Company*,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLINA RESTAURANT GROUP, INC.,<br>*a North Carolina Company*,<br><br>Defendant. | No. 2:24-cv-04368-DCN<br><br>**ORDER** |

The following matter is before the court on defendant Carolina Restaurant Group, Inc.'s ("CRG") motion for summary judgment, ECF No. 69. For the reasons set forth below, the court denies CRG's motion for summary judgment.

## I. BACKGROUND

This action arises from a landlord-tenant dispute. ECF No. 1, Compl. ¶ 1. CRG is a franchisee of Wendy's International, LLC ("Wendy's International") through its affiliate franchising entity Quality Is Our Recipe, LLC. Id. ¶ 7. It has operated over one hundred Wendy's franchises across the Southeastern United States. Id. Plaintiff Peretz, LLC ("Peretz") leased its real property in North Charleston, South Carolina to CRG for operation as a Wendy's franchise restaurant (the "Wendy's Restaurant"). Id.

On November 15, 2018, CRG entered into a franchisee development agreement with Wendy's International (the "2018 Development Agreement"). See ECF No. 20-6. Therein, CRG agreed to open fifteen new franchise locations and "reimage", or provide modernized exterior and interior remodeling for, its existing franchise portfolio pursuant to the then-existing "Groundbreaker Incentive Program." Id. at 2–3. The 2018

Development Agreement permitted CRG to use a lower-tier "Refresh Lite" reimaging design if it opened the new franchises by November 30, 2025 and completed all reimaging by December 31, 2024. Id.

In September 2019, CRG entered into a lease with Peretz (the "2019 Lease Agreement") for the Wendy's Restaurant. Compl. ¶ 8. The 2019 Lease Agreement required CRG to comply with Wendy's International's franchise reimaging standards and timelines and provided that the lease term was to expire on March 31, 2025. Id. ¶¶ 7–8.

The parties entered several contracts to complete the 2019 Lease Agreement transaction. Id. ¶¶ 7–11. CRG, Wendy's International, and the former lessee executed an assignment of the franchise rights for the Wendy's Restaurant to CRG on September 23, 2019 (the "Wendy's Assignment"). See ECF No. 20-2. The Wendy's Assignment contained provisions acknowledging CRG's existing obligation to reimage its franchise portfolio by December 31, 2024. Id. On October 1, 2019, CRG and the prior lessee executed an assignment and assumption of the lease to the Wendy's Restaurant. See ECF No. 20-4. Peretz and the prior lessee executed consent to the assignment and assumption of the lease to CRG on October 3, 2019. See ECF No. 20-5.

Peretz alleges that it proceeded with the 2019 Lease Agreement transaction in reliance that the Wendy's Restaurant would be subject to CRG's existing December 31, 2024 reimaging obligation in the 2018 Development Agreement and Wendy's Assignment. Compl. ¶ 11. CRG initially scheduled to reimage the Wendy's Restaurant in 2022, but it rescheduled multiple times due to construction costs. Id. ¶ 12. Then, CRG notified Peretz in February 2024 that it would renew the 2019 Lease Agreement only if Peretz agreed to finance the reimaging of the Wendy's Restaurant. Id. ¶¶ 12–13. Despite

multiple requests by Peretz, CRG did not provide a construction proposal in the following months. Id. ¶ 14.

On April 5, 2024, CRG notified Peretz that it had executed a superseding development agreement with Wendy's International (the "A&R Development Agreement"), containing a provision that extended the franchisee reimaging deadline to December 31, 2025 pursuant to the new "Groundbreaker 3.0 Incentive Program". Id. ¶ 16; see ECF No. 20-8. Additionally, CRG advised Peretz that Wendy's International had allegedly provided authorization to cease its franchise operation at the Wendy's Restaurant. Compl. ¶ 16. On April 16, 2024, Peretz accused CRG of breaching the 2019 Lease Agreement by unilaterally soliciting Wendy's International for an extension of the reimaging deadline beyond the lease term—effectively foreclosing any opportunity of reimaging for the Wendy's Restaurant. Id. ¶ 18. CRG informed Peretz that it would not renew the lease term or reimage the Wendy's Restaurant on July 17, 2024. Id. ¶ 19.

Peretz filed its complaint on August 9, 2024, asserting causes of action for breach of contract and breach of the covenant of good faith and fair dealing under South Carolina law. ECF No. 1, Compl. On November 17, 2025, CRG filed a motion for summary judgment. ECF No. 69. Peretz responded in opposition on December 3, 2025.[1]

[1] Peretz's asks the court to consider its response in opposition as a cross-motion for summary judgment. ECF No. 74 at 6–8. The court declines Peretz's request because doing so would convert the brief into an improper, successive motion for summary judgment on an issue that this court has previously adjudicated. See ECF No. 51. "[N]o federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment." Essex Ins. Co. v. Foley, 827 F. Supp. 2d 1326, 1329 n.2 (S.D. Ala. 2011). "Indeed, 'it sets bad precedent to allow parties to file serial motions for summary judgment' because repetitive motion practice undermines both the Court's and the parties' interests in efficiency and finality." Wootten v. Commonwealth of Va., 2016 WL 4742336, at *3 (W.D. Va. Sept. 12, 2016) (quoting Woodson v. Aspen Power, LLC, 2014 WL 11512251, at *2 (E.D. Tex. July 3, 2014)). Whether to consider a successive

ECF No. 74. CRG replied on December 12, 2025. ECF No. 81. The court held a hearing on the motion on May 4, 2026. ECF No. 103. As such, the motion is fully briefed and now ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the evidence in the

summary judgment motion is committed to the district court's discretion, and courts in this circuit, including this court, have routinely denied such motions on this ground. See, e.g., id. at *3–4 (denying a party's motion for partial summary judgment when the party had previously filed several motions for summary judgment or motions functionally seeking summary judgment); Vivos Acquisitions, LLC v. Health Care Res. Network, LLC, 2022 WL 18671064, at *1–2 (E.D. Va. Oct. 26, 2022); White v. Date Trucking, LLC, 2018 WL 11469493, at *1–2 (D. Md. July 20, 2018); Mey v. Venture Data, LLC, 2017 WL 10398567, at *1 (N.D.W. Va. July 6, 2017); see also Brown v. United States, 2025 WL 642115, at *5–6 (D.S.C. Feb. 27, 2025).

light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III. DISCUSSION

CRG moves for summary judgment on Peretz's causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.[2] ECF No. 69. The court first provides the relevant contractual provisions referenced by the parties throughout the instant case then turns to analyzing the parties' arguments in turn.

### A. The Relevant Contractual Provisions

#### 1. The 2018 Development Agreement

> If [CRG] is in the compliance with the terms and conditions of this Agreement, [CRG] will be entitled to . . . [t]he right to utilize the "Refresh Lite" reimaging design through December 31, 2024 for all Restaurants owned and operated by [CRG].

[2] The parties conceded at the motion hearing that the court applies the same analysis to Peretz's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. See ECF No. 103. In South Carolina, "[e]very contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Snyder v. Auto-Owners Ins. Co., 634 F. Supp. 3d 252, 258 (D.S.C. 2022) (alterations in original) (quoting Shiftlet v. Allstate Ins. Co., 451 F. Supp. 2d 763, 771 (D.S.C. 2006)). The South Carolina Supreme Court has clarified "that if a party to a contract believes another party to the contract has breached the implied covenant of good faith and fair dealing, the cause of action is simply one for breach of contract." Hall v. UBS Fin. Servs., Inc., 866 S.E.2d 337, 342 (S.C. 2021); see also RoTec Servs., Inc. v. Encompass Servs., Inc., 597 S.E.2d 881, 884 (S.C. Ct. App. 2004) ("[T]he implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract."). Accordingly, the court does not separately analyze Peretz's claim for breach of the implied covenant of good faith and fair dealing, as its disposition is the same as Peretz's breach of contract claim. See Floyd v. Mgmt. Analysis & Utilization, Inc., 2014 WL 971937, at *13 (D.S.C. Mar. 12, 2014).

Additionally, CRG moves for summary judgment on damages. ECF No. 74 at 20–21. Because the court previously found that a genuine dispute of material fact existed as to damages in adjudicating Peretz's motion for partial summary judgment, see ECF No. 102, the court need not reach the issue, see Anderson, 477 U.S. at 248.

ECF No. 20-6 at 2–3.

On November 15, 2018, Wendy's International and CRG executed the 2018 Development Agreement. Id. at 1. By its terms, it supersedes all prior franchise development agreements and formalizes CRG's participation in the "Groundbreaker Incentive Program." Id. The contract authorized CRG to use the lower-tier "Refresh Lite" reimaging design if its entire franchise portfolio was reimaged by December 31, 2024. Id. at 2–3. Relevant here, the 2018 Development Agreement does not establish a fixed deadline for completing the franchise reimaging that is contemplated by the contract. See id. at 1–12.

**2. The Wendy's Assignment**

> Notwithstanding anything to the contrary contained in the New Franchise Agreements, [CRG] and Guarantors acknowledge and agree that [CRG] must reimage the Restaurants in compliance with [Wendy's International's] Brand Sustainability Requirements and [Wendy's International's] then-current reimaging design plans, specifications, and standards, such that 60% of [CRG's] total portfolio of Wendy's restaurants ("Restaurant Portfolio") must be reimaged by December 31, 2020 and 100% of the [CRG's] Restaurant Portfolio must be reimaged by December 31, 2024.

ECF No. 20-2.

On September 23, 2019, Wendy's International, CRG, and the former lessee completed the Wendy's Assignment, transferring all franchise operation rights and obligations for the Wendy's Restaurant to CRG. Id. at 1–11. In Section 2(Q), CRG acknowledges an existing obligation to reimage its entire franchise portfolio—including the Wendy's Restaurant—by December 31, 2024. Id. at 7–8. The Wendy's Assignment does not reference or purport to incorporate the 2018 Development Agreement or the former lessee's existing lease with Peretz for the Wendy's Restaurant premises. See id. at 1–11.

**3. The 2019 Lease Agreement**

> [CRG] shall . . . operate, remodel, update, and modernize the [Wendy's Restaurant] in accordance with those standards adopted from time to time by [Wendy's International] on a system-wide basis for Permitted Concepts with such remodeling and modernizing being undertaken in accordance with [Wendy's International's] system-wide timing schedules for such activities.

ECF No. 20-1.

On October 7, 2019, Peretz and CRG entered the 2019 Lease Agreement for the Wendy's Restaurant premises upon its assignment to CRG from the prior lessee. Id. Section 15(ii) of the 2019 Lease Agreement governs CRG's reimaging obligations, stating that it will remodel the Wendy's Restaurant according to the "system-wide timing schedules" of Wendy's International. See id. at 16. Peretz and CRG do not dispute that the 2019 Lease Agreement is the only agreement between them. See Compl.; ECF Nos. 69 at 17–29, 74 at 8–19.

**4. The A&R Development Agreement**

> If 85% of the existing Restaurants owned and operated by [CRG] or its Affiliate have been reimaged by December 31, 2024, [CRG] or its applicable Affiliate shall receive an extension to Franchisor's Image Activation program deadline, such that 100% of Developer's or its Affiliate's Restaurant Portfolio must be reimaged by December 31, 2025.

ECF No. 20-8.

On February 23, 2024, Wendy's International and CRG executed the A&R Development Agreement, formalizing CRG's participation in the "Groundbreaker 3.0 Incentive Program". Id. By its terms, the contract consolidated CRG's franchise development rights and obligations and superseded the 2018 Development Agreement. See id. at 2. Section 4.B provided for an extension of the 2018 Development Agreement's December 31, 2024 reimaging deadline to December 31, 2025 if CRG

reimaged 85% of its franchise portfolio by December 31, 2024. Id. at 4. However, no provision explicitly required that the Wendy's Restaurant to be included among the franchises reimaged by the earlier date. See id. 1–20. Additionally, the agreement makes no reference to CRG's existing contractual relationships with the owners of the properties where its Wendy's International franchises operate, including Peretz. Id.

**B. Analysis**

Peretz asserts cause of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 25–34. As to both claims, it pleaded that the 2019 Lease Agreement is the only "valid and legally binding contract" between the parties. See id. ¶¶ 26, 31. It maintained that the 2019 Lease Agreement required CRG to reimage the Wendy's Restaurant "no later than a date set by Wendy's International" and contends that Wendy's Assignment and consent to the lease assignment established December 31, 2024, as the operative reimaging deadline. Id. ¶ 27. Thus, Peretz alleged that CRG breached the 2019 Lease Agreement "by repudiating its obligation to complete the Required Renovations by December 31, 2024." Id. ¶ 29. Further, it pleaded that CRG breached the implied covenant of good faith and fair dealing by "requesting—without Peretz LLC's prior knowledge or consent—that Wendy's International release it from performing its Renovation Obligations by December 31, 2024" through the A&R Development Agreement. Id. ¶ 33 (cleaned up). As for its damages, Peretz avers that CRG's failure to complete the reimaging caused economic losses, including diminished property value, lost rental income, and lost opportunities from foregoing a potential sale of the Wendy's Restaurant. See id. ¶¶ 21–24, 29, 34.

To establish breach of contract under South Carolina law, a plaintiff must establish three elements: (1) a binding contract entered into by the parties; (2) breach or unjustifiable failure to perform the contract; and (3) damages as a direct and proximate result of the breach. See King v. Carolina First Bank, 26 F. Supp. 3d 510, 517 (D.S.C. 2014). Damages recoverable for a breach of contract must either flow as a natural consequence of the breach or must have been reasonably within the parties' contemplation at the time of the contract. Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 880 (S.C. Ct. App. 1997). To prevail on a breach of contract claim, the plaintiff bears the burden of establishing the three elements of a breach of contract claim by a preponderance of the evidence. See Ferguson v. Waffle House, Inc., 18 F. Supp. 3d 705, 731 (D.S.C. 2014) (citing Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962)).

CRG argues that Peretz's claims fail as a matter of law because it did not breach the 2019 Lease Agreement's obligation to reimage the Wendy's Restaurant in accordance with Wendy's International's "system-wide timing schedules." ECF No. 64 at 13–29. According to CRG, the 2019 Lease Agreement itself does not impose a fixed reimaging deadline and permits Wendy's International to establish one at its discretion, independent of Peretz. Id. at 19–20. CRG asserts that Wendy's International established December 31, 2025 as the operative deadline pursuant to the terms of the A&R Development Agreement. Id. at 21–23. It further contends that Peretz's claims are premised on attempts to improperly enforce contracts to which it is not a party and communications that it could not have justifiably relied on. Id. 23–29. Accordingly, CRG's interpretation of the 2019 Lease Agreement's "system-wide timing schedules" provision is that the

December 31, 2025 deadline under the A&R Development Agreement controls the breach analysis because the "Groundbreaker 3.0 Incentive Program" was offered to all franchisees within the Wendy's International system. See id. at 13–22.

In opposition, Peretz argues that December 31, 2024, is the deadline for the operative "system-wide timing schedule" contemplated by the 2019 Lease Agreement and that CRG breached the contract by failing to reimage the Wendy's Restaurant by that date. ECF No. 74 at 8–19. It asserts that the A&R Development Agreement did not set a "system-wide timing schedule" for all Wendy's International franchisees because the terms of that agreement applied to solely to CRG's franchise portfolio. See id. Further, it contends that it relied on its understanding and incorporation of CRG's reimaging obligations in the 2018 Development Agreement, Wendy's Assignment, and other franchisee documents for its interpretation of the 2019 Lease Agreement terms. Id. at 13–16, ECF No. 103.

At base, the parties dispute the intent, meaning, and effect of the phrase "system-wide timing schedules" in the 2019 Lease Agreement. Compare id. at 8–19, with ECF No. 64 at 17–29.

The 2019 Lease Agreement is governed by South Carolina law, which is used to determine whether a contract is ambiguous. "A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation." S.C. Dep't of Nat. Res. v. Town of McClellanville, 550 S.E.2d 299, 302 (S.C. 2001). Ambiguity exists when considering multiple provisions of a contract together leads to multiple reasonable interpretations. See Hardy v. Aiken, 631 S.E.2d 539, 541–42 (S.C. 2006) (finding a restrictive covenant to be ambiguous because its amendment provision permitted any

changes to the covenant while the restrictive covenant itself clearly stated that it expired in twenty-five years and contained no express provision allowing to extend the duration); Cmty. Servs. Assocs., Inc. v. Wall, 808 S.E.2d 831, 836 (S.C. Ct. App. 2017) (finding that the meaning of two paragraphs in a restrictive covenant was ambiguous because they could reasonably be interpreted together to have two different meanings); W. Anderson Water Dist. v. City of Anderson, 790 S.E.2d 204, 208 (S.C. Ct. App. 2016) (finding that "two provisions, considered together, render[ed] the contract reasonably susceptible to at least two interpretations," making the contract ambiguous).

Additional principles of South Carolina contract interpretation dictate that contracts "will be interpreted so as to give effect to all of their provisions, if practical." Reyhani v. Stone Creek Cove Condominium II Horizontal Property Regime, 494 S.E.2d 465, 468 (S.C. Ct. App. 1997) (citing 17A Am. Jur. 2d Contracts § 385 (1991)). As such, "[i]t is fundamental that, in the construction of the language of a contract, it is proper to read together the different provisions therein dealing with the same subject matter, and where possible, all the language used should be given a reasonable meaning." Bluffton Towne Ctr., LLC v. Gilleland-Prince, 772 S.E.2d 882, 890 (S.C. Ct. App. 2015) (quoting Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC, 649 S.E.2d 494, 498–99 (S.C. Ct. App. 2007) ). "In construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four corners of the instrument." Silver v. Abstract Pools & Spas, Inc., 658 S.E.2d 539, 542 (S.C. Ct. App. 2008) (quoting McPherson v. J.E. Sirrine & Co., 33 S.E.2d 501, 509 (1945)). If a contract is unambiguous, a court must enforce it "according to its terms regardless of its wisdom or

folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC, 667 S.E.2d 7, 13 (S.C. Ct. App. 2008).

The court finds that "system-wide timing schedules" in the 2019 Lease Agreement cannot reasonably be interpreted in only one manner and is therefore ambiguous as to whether CRG breached the contract. See Hardy, 631 S.E.2d at 541–42. In the instant motion, CRG asserts that "system-wide" should be determined by whether a deadline is offered to all franchisees, such that multiple timing schedules may apply to different Wendy's International franchisees. See ECF No. 64 at 17–29. Peretz maintains that Wendy's International has a single "system-wide timing schedule," and that the A&R Development Agreement is merely an exception for CRG's franchise portfolio only. See ECF No. 74 at 8–19. However, neither party identifies a provision in the 2019 Lease Agreement explaining how "system-wide" is to be measured for Wendy's International or what constitutes a "timing schedule." See Reyhani, 494 S.E.2d at 468. Further, factual disputes regarding the parties' intent and understanding at the time of entering the 2019 Lease Agreement prevent the court from determining the contract's meaning as a matter of law. See Silver, 658 S.E.2d at 542.

Because there is a genuine dispute of material fact as to the term "system-wide timing schedules" in the 2019 Lease Agreement, the court denies CRG's motion for summary judgment on Peretz's breach of contract and breach of the implied covenant of good faith and fair dealing.

## IV. CONCLUSION

For the foregoing reasons, the court **DENIES** CRG's motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 27, 2026**
**Charleston, South Carolina**